## ALEXANDER *v.* ALEXANDER.

HUSBAND AND WIFE; ESTOPPEL; EVIDENCE; BURDEN OF PROOF; PRESUMPTION OF DEATH; ALIMONY; APPEAL AND ERROR.

1. Where a husband, with knowledge of the facts, continues to live with his wife for many years, he is estopped to assert a right to an annulment of the marriage on the ground that one of her children, born prior to the marriage, is illegitimate.

2. In a suit by a man to annul his marriage, upon the ground that, at the time of the marriage, the defendant had a prior husband living and undivorced, the burden of proof is upon the plaintiff to establish that the prior husband was living at the time of the marriage.

3. While, in the absence of any evidence as to his whereabouts, the law, within seven years after his departure, will presume that a person is still alive, yet this presumption may be removed by credible evidence of his death, however slight.

4. The presumption that a woman's prior husband, absent less than seven years, was still living, is removed where she, called as a witness in a suit to annul a subsequent marriage, testifies that he was in failing health, being afflicted with tuberculosis, and that he decided to make a change of climate, in the hope of recovery, and accordingly obtained a position as traveling salesman in California; that he left her with the assurance that he intended to return, and that shortly afterwards she received a letter stating he had been taken with a hemorrhage on the train, and had died; failure to produce the letter being accounted for.

5. Where, in a suit by a husband against his wife, to annul their marriage, the court denies the relief sought, it has no jurisdiction to award permanent alimony to the wife. (Construing D. C. Code, sec. 975–978, 31 Stat. at L. 1346, chap. 854.)

6. Where, on an appeal by the plaintiff from a decree dismissing a bill by a husband to annul a marriage, and granting permanent alimony to the wife, this court found that the court below was right in so far as it refused to annul the marriage, but erred in granting alimony, it *affirmed* the decree, and remanded the cause, with directions to strike from the decree the provision requiring the payment of alimony.

No. 2179. Submitted November 3, 1910. Decided December 5, 1910.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia, sitting as a court of equity, dismissing a bill for the annulment of the plaintiff's marriage with the defendant, and awarding alimony to the defendant. *Affirmed, with direction to strike from the decree the provision relating to alimony.*

The COURT in the opinion stated the facts as follows:

This is a suit in equity brought by appellant, Benjamin Alexander, in the supreme court of the District of Columbia, to annul the marriage relation existing between him and the appellee, Laura Virginia Alexander.

Plaintiff in his bill alleges, among other things, that the defendant was married October 5, 1868, to one Ridgeway, who died April 30, 1869; that on May 7, 1877, defendant married John W. Dickson, who died October 27, 1886; that on October 18, 1887, defendant married one Eldridge Huntoon; that three children, May, Frank, and Eldridge, Jr., were born of this marriage; and that Huntoon died July 31, 1892. It is further alleged that about 1893 defendant was married to one George Freeman, the exact time and place being unknown to the plaintiff, and that one child, William Freeman, was born of this marriage about the 8th of July, 1895. Plaintiff further alleges that he was totally ignorant and unaware, at the time of his marriage to defendant, that defendant had a husband

living and undivorced, and also avers that "if it shall develop by the proof herein that said George Freeman was never legally married to the defendant; that the said child William Freeman was born of illicit union and is a bastard, and that these facts were known to defendant, and intentionally concealed by her from plaintiff, at the time of the marriage of the parties, prior and subsequently thereto; and that, after disclosure of such information, plaintiff has not cohabited with defendant." Plaintiff's prayer for relief is upon alternative grounds: First, that the defendant was never married to Freeman, and the son William Freeman was not born in lawful wedlock; and, second, that even assuming that defendant was lawfully married to Freeman, Freeman, at the time of defendant's marriage to plaintiff, was, in the eyes of the law, still living and undivorced.

Defendant answered, admitting the allegations in relation to her marriage with Ridgeway, Dickson, and Huntoon; denying that she was ever married to one George Freeman, but alleging, on the contrary, that in 1893 she was married to one Mark Freeman, said marriage being solemnized at Rockville, in the State of Maryland. She alleges that one son, William Freeman, was born as the result of this marriage, July 8, 1895, which son is still living with the defendant. Further answering, "defendant admits that her said husband, Mark Freeman, left this District, but denies that he deserted the defendant. On the contrary, she alleges that the said Mark Freeman, during the latter part of the year 1894, owing to his feeble physical condition, which was the result of tuberculosis, accepted a position as commercial traveler in the State of California and started upon a trip to that State, expecting and intending to return to his home in this city; but that, on the way to that State, and within a few days after leaving his home, he died from a hemorrhage of the lungs." Defendant admits the marriage to plaintiff, as alleged in the bill, and avers that she has been a true and faithful wife, but that plaintiff has made her life sad and miserable; that throughout their married life, he constantly quarreled with, fought, and abused the defendant, and that he long since deserted her without provocation on her part, and

has not returned to her, nor contributed to her support. She prays the plaintiff's bill may be dismissed, and that she may go hence with costs. Testimony was taken before an examiner in open court, and on hearing, plaintiff's petition was dismissed, and he was ordered to pay the defendant permanent alimony at the rate of $5 per month.

*Mr. J. H. Adriaans* for appellant.

*Mr. Samuel D. Truitt* and *Mr. Thomas H. Patterson* for appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Disposing first of the contention that appellee was not lawfully married to Freeman, we are of opinion, after a careful review of the evidence, that the court was fully justified in decreeing judgment for the defendant. Plaintiff testified in support of this contention that when he married defendant, she was passing under the name of Huntoon; that she was known by that name in the community; and that the marriage license was issued in the name of Huntoon. Defendant testified that, being unable to read, she was not aware of the name given at the time the marriage license was issued; but that, when the ceremony was being performed, and the minister referred to her by the name of Huntoon, she stopped the ceremony and informed him that her name was Freeman, and that she was then married to plaintiff under that name. Her testimony relating to this incident is positively denied by the plaintiff. On this point, as on many others, there is an almost irreconcilable conflict in the evidence. The court is therefore compelled to draw its conclusions from the circumstances surrounding the case.

It appears that plaintiff had known defendant for a period of two years prior to their marriage. He had known the three Huntoon children and the Freeman child, who were living with the defendant. After plaintiff's marriage to defendant,

these children continued to reside with them. True, he claims that the Freeman child passed by the name of Huntoon, and that he supposed that was his correct name. This evidence, however, is absolutely discredited by the record. The record of the birth of the Freeman child, disclosing the name of the mother as Laura Freeman, her maiden name as Laura Fugitt, and the name of the father as Max Freeman, appears in the office of the health department of the District of Columbia. It should be noted here that the witnesses who knew Freeman referred to him by different Christian names, as Mark, Mack, and Max, all, however, referring to the alleged husband of the defendant. A number of witnesses testified that the Freeman child was known generally by the name of Freeman. It is inconceivable that, during all of this long period, plaintiff's attention should not have been called to the child's true name. The evidence, we think, discloses conclusively that he did know the true name of the child, and that he not only married the defendant, knowing her true name, but that, while possessed of this knowledge, he lived with her for many years. This estops him from asserting any right to the annulment of the marriage on the ground that the Freeman child was born out of lawful wedlock.

Passing to the second or alternative ground of relief set forth in the bill, it appears by the uncontradicted evidence of the plaintiff that her fourth husband, Freeman, in the latter part of 1894, was in failing health, being afflicted with tuberculosis, and that he decided to make a change of climate, with the hope of recovery. He accordingly secured a position as traveling salesman in the State of California. He left defendant in the city of Washington, with the assurance that it was his intention to return. Shortly thereafter, defendant testified she received a letter stating that he had been taken with a hemorrhage while on the train, and had died. This, she testified, was the last she ever heard from him or of his whereabouts.

Freeman's departure for California occurred less than seven years prior to the date of her marriage with the plaintiff. It is therefore urged by plaintiff that, less than seven years having

elapsed between the disappearance of Freeman and plaintiff's marriage with defendant, the law presumes that Freeman, at the time of their marriage, was still alive and undivorced, and that therefore the marriage is a nullity. Plaintiff testified that as soon as this fact was brought to his knowledge, he at once refused to live with the defendant, and instituted the present suit. The evidence discloses that the defendant is illiterate and unable either to read or write. This, to some extent, would account for her seeming indifference in not attempting to further ascertain the facts relating to the alleged death of Freeman.

It is contended by counsel for plaintiff that the burden of proof rested upon the defendant to establish the fact that Freeman was dead at the time of her marriage with plaintiff. With this contention we do not agree. The burden of proof rested upon plaintiff to establish the material averments of his bill. One of the material allegations was to the effect that Freeman was living and undivorced at the time of plaintiff's marriage with defendant. To support this allegation he placed defendant upon the witness stand, and she testified to the departure of her husband for California, and the receiving of the letter announcing his death, as above detailed. No other evidence appears in the record upon this point. While it is true that, in the absence of any evidence whatever as to the whereabouts of Freeman, the law, within seven years after his departure, will presume that he is alive, yet this presumption may be removed by credible evidence of his death, however slight. The uncontradicted evidence here produced is sufficient, in our judgment, to remove that presumption. The failure of defendant to produce the letter or the certificate of her marriage to Freeman is accounted for where she testified that plaintiff at one time, in a fit of anger, took a razor and threatened to kill her, compelling her to deliver to him the box in which was contained the certificate and the letter. These he destroyed. Considering the evidence as a whole, and the circumstances surrounding the case as disclosed by the record, we agree with the court below that the evidence is sufficient to remove the legal presumption

that Freeman was alive at the time of the marriage here sought to be annulled.

It is urged that the court below erred in awarding permanent alimony. Sec. 975 of the Code [31 Stat. at L. 1346, chap. 854] provides as follows: "During the pendency of a suit for divorce, or a suit by the husband to declare the marriage null and void, where the nullity is denied by the wife, the court shall have power to require the husband to pay alimony to the wife for the maintenance of herself and their minor children committed to her care, and suit money, including counsel fees, to enable her to conduct her case, whether she be plaintiff or defendant, and to enforce obedience to any order in regard thereto by attachment and imprisonment for disobedience. The court may also enjoin any disposition of the husband's property to avoid the collection of said allowances, and may, in case of the husband's failure or refusal to pay such alimony and suit money, sequestrate his property and apply the income thereof to such objects. The court may also determine * * * [who] shall have the care and custody of infant children pending the proceedings." Sections 976, 977, and 978 of the Code provide for the decreeing of permanent alimony in cases of divorce, but these statutes have no reference to actions for the annulment of marriage. We are of the opinion that, under these provisions of the Code, the court below was limited in its jurisdiction in the present proceeding to the granting of alimony *pendente lite.* An application was made for such allowance, but the court refused to grant it, allowing the motion to await the final determination of the case, and, as a part of the final decree entered, directed the plaintiff to pay the sum of $5 per month until the further order of the court. The decree being final, the alimony therein granted was in the nature of permanent alimony. In this, the court exceeded its jurisdiction, and committed error.

The decree of the court below, dismissing the bill, is affirmed, with costs, and the cause remanded, with directions to strike from the decree the provision requiring the payment of alimony.

*Affirmed.*